UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PABLO RODRIGUEZ,                        :

                        Petitioner,     :       12 Civ. 2146 (AJN)(HBP)

        -against-                       :       REPORT AND
                                                RECOMMENDATION
ERIC T. SCHNEIDERMAN,                   :

                        Respondent.     :

----------------------------------X


                PITMAN, United States Magistrate Judge:


                TO THE HONORABLE ALISON NATHAN, United States District

Judge,


I.      Introduction


                Petitioner Pablo Rodriguez seeks, by his pro se peti-

tion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating a judgment of conviction imposed on March 21, 2007

after a jury trial, by the Supreme Court of the State of New

York, New York County (Farber, J.), for one count of engaging in

a course of sexual conduct against a child in the first degree,

in violation of New York Penal Law Section 130.75(1)(a) (Pet. for

a Writ of Habeas Corpus, filed Mar. 15, 2012, (Docket Item 2)

("Pet.") at 1).  Rodriguez was sentenced to a term of imprison-

ment of twenty years, and a five-year term of post-release

supervision and is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that his petition be denied.

II.   Facts

    A.   Facts Giving Rise to
         Petitioner's Conviction

Petitioner's conviction arises from sexual acts he committed against a four-year-old girl, NR,[1] which occurred from April 1, 2000 through the summer of 2005.  The evidence offered at trial established to following facts.

In 2000, 25-year-old CJ lived in a two-bedroom apartment in upper Manhattan with her three children:  then nine-year-old CR, four-year-old NR, and four-month-old DR (Tr.[2] 33).  CJ and the petitioner both worked at Morgan Stanley, but CJ also worked some evenings as a babysitter (Tr. 37, 39).

In February 2000, petitioner moved in with CJ, along with his eight-month-old son, NZ, and his teenage cousin, SW (Tr.

---

[1] In accord with Judge Nathan's Order and to protect their identities, I shall refer to all minors and the victim's mother by their initials (Order, filed June 28, 2012, (Docket Item 14) at 1).

[2] "Tr." refers to the trial transcript.

40-41).  Petitioner stopped working for Morgan Stanley in April 2000 and became the primary care giver for CJ's children while CJ worked or ran errands (Tr. 44-45).  Petitioner carried out these duties until he and CJ amicably separated and he moved out in 2003 (Tr. 55-56).

At some point during his stay in CJ's apartment, petitioner began sexually abusing NR (Tr. 237).  On multiple occasions, while CJ worked or ran errands, petitioner would take NR into her room and lock the door.  Once there, petitioner would perform acts of oral and anal sex on NR, or make NR perform acts of oral sex on him (Tr. 239-59, 308-09).  NR and petitioner were the only persons present during these encounters, and petitioner instructed NR to keep them secret (Tr. 240-41).  NR witnessed petitioner commit a prior act of violence against SW, and feared that petitioner would hurt her or CJ if she disclosed these episodes to anyone (Tr. 263-66).

Although petitioner moved out in 2003, he and CJ remained friends, and occasionally petitioner, now living with his sister, would watch CJ's children (Tr. 70).  During one such visit in the summer of 2005, petitioner committed acts of oral sex on NR (Tr. 275-78).

In early 2005 CJ became concerned by NR's behavior. Specifically, in March 2005, she walked into the living room and

observed CR, her thirteen-year-old son, lying on top of NR, who was lying on the sofa (Tr. 63-65).  She said that it reminded her of an incident in 2003 in which she scolded the two for simulating sexual intercourse (Tr. 64-65).  Around this time, CJ also caught her daughter "playing with herself" in the bathroom (Tr. 65-66).

Concerned for NR, CJ took her daughter to the Children's Advocacy Center in March and April of 2005 to have NR evaluated for potential abuse (Tr. 62-63).  In a conversation with social worker Lisa Saunders, NR denied any abuse and seemed friendly and cooperative (Tr. 165-66).  Additionally, an expert in pediatrics and child abuse at the Center, Dr. Grimm, examined NR on April 4, 2005 and discovered no detectable physical signs that NR had been subjected to sexual contact (Tr. 138-40).

On June 9, 2006, CJ caught NR and one of NR's friends in the bathroom simulating sexual intercourse (Tr. 73-74).  CJ scolded both girls and took NR into the bedroom to speak with her privately (Tr. 74-75).  CJ asked NR whether anyone had abused her, and NR began to cry (Tr. 75).  CJ threatened to hit NR if she did not explain herself and, in response, NR disclosed that petitioner had sexually abused her (Tr. 76).  CJ brought NR back to the Children's Advocacy Center, where NR disclosed to Ms. Sanders how petitioner had abused her.  On June 20, 2006, NR

4

disclosed the same facts to the District Attorney's Office (Tr. 80-81).

Petitioner was arrested the following day and charged with engaging in a course of sexual conduct against a child in the first degree, in violation of New York Penal Law Section 130.75(1)(a) (Mem. of Law in Supp. of Answer Opposing Pet. for a Writ of Habeas Corpus, filed June 29, 2012, (Docket Item 17) ("Opp'n Mem.") at 2).

B.   Trial Court Proceedings

Petitioner's trial began on February 5, 2007 (Tr. 1). The prosecution's case largely consisted of testimony from CJ, NR, and Ms. Sanders establishing the foregoing events.  In addition, the prosecution offered the testimony of Dr. Eileen Treacy, an expert in child sexual abuse and developmental psychology.  Dr. Treacy testified that an abuser will develop a relationship with a child, which later enables sexual abuse (Tr. 347).  She also identified the factors relevant to a child's ability to reveal sexual abuse to others and the reasons why a child may delay disclosing abuse or deny it altogether (Tr. 353-57).  Petitioner, represented by Don Savatta, Esq., initially considered calling an expert psychologist, but ultimately offered no evidence in petitioner's defense (Tr. 395).

In summation, defense counsel used CJ's testimony to argue that there was evidence CR had abused NR and that NR lied to protect him (Tr. 427-40).  Counsel also used Dr. Treacy's testimony to show that CR, not petitioner, appropriately fit the profile of NR's abuser (Tr. 431-34).  The prosecution's summation reiterated the foregoing events and NR's testimony (Tr. 452-53).

On March 21, 2007, petitioner appeared for sentencing (S. Tr.[3] 1).  Before sentencing, petitioner's trial counsel moved to have new counsel appointed for all post-trial motions (Letter to the Honorable Thomas A. Farber, dated February 26, 2007, annexed as Exhibit K to Opp'n Answer, at 1-2).  In support of his application, petitioner's trial counsel cited federal appellate cases holding that defense counsel in a child abuse case can be found to be ineffective if he fails to consult with or rebut the prosecution's psychological expert and noted that the likelihood that he would have to testify against his client concerning this issue presented a conflict of interest (Letter to the Honorable Thomas A. Farber, dated February 26, 2007, annexed as Exhibit K to Opp'n Answer, at 1).  Judge Farber denied the application, noting that defense counsel effectively cross-examined the prosecution's expert witness and expressing his belief that

_____

[3]"S. Tr." refers to the sentencing transcript.

6

defense counsel did not call his own expert witness for strategic reasons (Letter to Don Savatta, Esq., dated February 26, 2007, annexed as Exhibit L to Opp'n Answer, at 1).  The Court subsequently sentenced the petitioner to a determinate term of twenty years with five years of post-release supervision (S. Tr. 14).

C.   Post-Conviction Proceedings

1.   Direct Appeal

Petitioner, represented by Richard Greenberg, Esq., appealed his conviction to the Appellate Division of the Supreme Court for the First Department, asserting three claims.  First, petitioner claimed that the prosecution's failure to call CR as a witness warranted a missing witness instruction and that the Trial Court's failure to give such an instruction constituted reversible error (Brief for Defendant-Appellant, dated Mar. 23, 2009, annexed as Exhibit A to Pet., ("Pet. App. Br.") at 18).  Second, the prosecution's comment during summation that petitioner "had the power to call witnesses at trial, but failed to exercise [that] right," improperly shifted the burden of proof, denying petitioner a fair trial (Pet. App. Br., annexed as Exhibit A to Pet., at 29).  Third, petitioner claimed that his

conviction was against the weight of the evidence (Pet. App. Br.,
annexed as Exhibit A to Pet., at 35).

The Appellate Division affirmed petitioner's conviction
on November 5, 2009, stating in pertinent part:

> The trial court properly denied defendant's
> request for a missing witness charge regarding the
> child's older brother, since defendant did not
> demonstrate that he could have provided any material
> noncumulative information (see People v Ortiz, 44
> AD3d 364 (2007), lv denied 9 NY3d 1008 (2007)).
> The child testified that her brother was not present
> when defendant abused her, and the record indicates
> that he could have testified, at most, about
> insignificant matters such as defendant and victim's
> unremarkable movements in the apartment.
>
> The court's instructions were sufficient to
> prevent defendant from being prejudiced by those
> portions of the prosecutor's summation that allegedly
> shifted the burden of proof (see People v Santiago, 52
> NY2d 865(1981); see also People v D'Alessandro, 184
> AD2d 14, 118-119 (1992), lv denied 81 NY2d 884
> (1994)), and a mistrial was not warranted.
>
> *          *          *
>
> The verdict was not against the weight of the
> evidence (see People v Danielson, 9 NY3d 342, 348-49
> (2007). . . .  The child victim's inability to remember
> certain details, and her delay in reporting the pattern
> of abuse, were satisfactorily explained.

People v. Rodriguez, 67 A.D.3d 417, 417, 889 N.Y.S.2d 15, 15-16
(1st Dep't 2007).

Petitioner, again assisted by counsel, sought leave to
appeal to the New York Court of Appeals.  Petitioner's letter
reasserted his claims concerning the missing witness instruction

8

and the prosecution's summation, but did not assert his claim
concerning the weight of the evidence (Letter to the Honorable
Jonathan Lippman, dated December 21, 2009, annexed as Exhibit A
to Opp'n Answer, at 1).  The Court of Appeals denied petitioner's
application without opinion on March 9, 2010.  <u>People v. Rodri-
guez</u>, 14 N.Y.3d 805, 925 N.E.2d 943, 899 N.Y.S.2d 139 (2010).

     2.   Motion to
        <u>Vacate Judgment</u>

By a <u>pro</u> <u>se</u> motion dated March 1, 2010, petitioner
sought to vacate the judgment of the Trial Court, pursuant to
N.Y. Crim. Proc. L. § 440.10 (Notice of Motion to Vacate Judgment
Pursuant to N.Y. Crim. Proc. L. § 440.10, dated March 1, 2010,
annexed as Exhibit B to Pet., at 2).  Petitioner filed an adden-
dum to this motion on April 5, 2010 asserting an additional
ground for relief (Notice of Mot. to Vacate J. Pursuant to N.Y.
Crim. Proc. L. § 440.10 Addendum Arg., dated April 5, 2010,
annexed as Exhibit B to Pet., at 2).[4]  Petitioner asserted a
total of five claims in this motion:  (1) the prosecution's
failure to call an eyewitness violated petitioner's federal and
state right to confrontation under <u>Melendez-Diaz v. Massachu-</u>

_____

[4]Although they are separately paginated, Exhibit B to the
Petition includes both the motion to vacate an the addendum.

setts, 557 U.S. 305 (2009); (2) the fact that defendant needed to subpoena an eyewitness not called by the prosecution violated his federal and state right to confrontation under  Melendez-Diaz v. Massachusetts, supra; (3) the Trial Court's exclusion of evidence implicating a third party violated petitioner's right to present a complete defense; (4) the Trial Court's jury charge was improper and (5) petitioner's trial counsel did not provide effective assistance.   Petitioner asserted that his trial counsel was ineffective because he (1) failed to introduce videotape evidence of NR's grand jury testimony during his impeachment of NR and (2) failed to consult with or call a psychological expert of his own (Aff. in Supp. of Mot. to Vacate J., annexed as Exhibit B to Pet., ("Mot. to Vacate") at 4-5; Aff. in Supp. of Mot. to Vacate J. Addendum Arg., annexed as Exhibit B to Pet., ("Mot. to Vacate Add.") at 5).

On July 22, 2010, Justice Farber denied petitioner's motion to vacate because "all of the issues defendant now raises were either raised previously on appeal or could have been raised on appeal."  Alternatively, the Supreme Court denied the claims as meritless (Decision, dated July 22, 2010, annexed as Exhibit C to Opp'n Answer, at 2-3).

The Appellate Division denied petitioner's application for leave to appeal from the denial of his motion to vacate on

December 15, 2010 (Certificate Denying Leave, dated December 15, 2010, annexed as Exhibit D to Opp'n Answer, at 1).

        3.    Writ of Error
               Coram Nobis

        On February 13, 2011, petitioner filed a pro se petition for a writ of error coram nobis in the Appellate Division, First Department (Notice of Pet. for a Writ of Error Coram Nobis, dated February 13, 2011, annexed as Exhibit C to Pet., at 1). Petitioner argued that his appellate counsel was ineffective for failing to raise six issues:[5] (1) the Trial Court did not comply with N.Y. Crim. Proc. L. § 310.30 in responding to six jury notes; (2) the Trial Court gave an improper jury charge; (3) the fact that NR covered her face during her testimony constituted a violation of the petitioner's state and federal right to confrontation; (4) the Trial Court incorrectly excluded evidence of third-party culpability; (5) the Trial Court incorrectly admitted testimony of the petitioner's prior bad acts and (6) petitioner's trial counsel was ineffective for failing to consult or retain a

_____

     [5]In the 'questions presented' section of his memorandum of law in support of his petition for a writ of coram nobis, petitioner claimed that his appellate counsel failed to raise seven issues on appeal.  However, petitioner only argued six of those issues in his memorandum (Mem. of Law in Supp. of Pet. for a Writ of Error Coram Nobis, dated February 13, 2011, annexed as Exhibit C to Pet., ("Coram Nobis Mem.") at 6-7, 9-42).

psychological expert to rebut the prosecution's expert testimony (Coram Nobis Mem., annexed as Exhibit C to Pet., at 6-7).

On October 18, 2011, the Appellate Division denied the motion without opinion.  The Court of Appeals denied leave to appeal on March 8, 2012 (Certificate Denying Leave, dated March 8, 2012, annexed as Exhibit F to Opp'n Answer, at 1).

D.   The Pending Petition

Petitioner, proceeding pro se, filed the present petition on for habeas corpus on March 15, 2012, asserting claims drawn from his appellate brief, motion to vacate and his petition for a writ of error coram nobis (Pet. (Docket Item 2) at 4).[6] Specifically, petitioner argues that (1) the Trial Court's failure to give a missing witness instruction to the jury vio-lated his right to due process; (2) the prosecution's comments about petition's right to call witnesses during summation shifted

_____

[6]The petition does not clearly identify the claims petitioner is asserting.  In Item 13 of his petition, he asserts by reference all arguments raised in his direct appeal and collateral attacks (Pet. (Docket Item 2) at 4).  His memorandum of law, however, addresses only his missing witness and ineffective-assistance-of-appellate-counsel claims (Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus, annexed as Exhibit D to Pet., ("Pet. Habeas Mem.") at 1-16).  Construing petitioner's pro se petition liberally, Roldan v. Racette, 984 F.2d 85, 87 (2d Cir. 1993), I shall address each of the claims raised in Item 13 of the petition.

the burden of proof in violation of his right to a fair trial;
(3) petitioner's conviction is based upon legally insufficient
evidence; (4) the prosecution's failure to call an eyewitness
violated his right to cross-examination recognized by Melendez-
Diaz v. Massachusetts, supra, 557 U.S. 305; (5) the Court's
failure to subpoena the prosecution's witness violated his right
to cross-examination recognized by Melendez-Diaz v. Massachu-
setts, supra, 557 U.S. 305; (6) the exclusion of evidence of
third-party culpability violated his right to a fair trial; (7)
the Trial Court's improper jury charge violated his right to due
process; (8) petitioner received ineffective assistance from his
trial counsel and (9) petitioner received ineffective assistance
from his appellate counsel (Pet. (Docket Item 2) at 4).

       With respect to his ineffective assistance claims,
petitioner contends that his trial counsel was ineffective
because he (1) failed to consult or retain a psychological expert
and (2) impeached NR with a transcript of her grand jury testi-
mony rather than by using a videotaped version of that testimony
(Pet. (Docket Item 2) at 4).  Petitioner asserts his appellate
counsel was ineffective because he failed to argue on appeal that
(1) the Trial Court failed to comply with N.Y. Crim. Proc. L. §
310.30 during jury deliberations; (2) the Trial Court gave an
improper jury charge; (3) NR's covering her face during her

13

testimony violated petitioner's rights under the Confrontation Clause; (4) the Trial Court improperly excluded testimony of third-party culpability; (5) the Trial Court erroneously admitted evidence of the petitioner's prior bad acts and (6) his trial counsel was ineffective for failing to consult or retain a psychological expert (Pet. (Docket Item 2) at 4).

Respondent filed his opposition on June 29, 2012 (Docket Item 17), and petitioner submitted his reply on September 4, 2012 (Docket Items 24-26).

III. Analysis

   A.   Exhaustion and
        Procedural Bar

        1.  Applicable
            Legal Principles

It is fundamental that a state prisoner seeking to vacate his conviction on the ground that his federal constitutional rights were violated must first exhaust all available state remedies.  28 U.S.C. § 2254(b); Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 275 (1971); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000).

        If anything is settled in habeas corpus jurispru-
        dence, it is that a federal court may not grant the
        habeas petition of a state prisoner "unless it appears

14

> that the applicant has exhausted the remedies available
> in the courts of the State; or that there is either an
> absence of available State corrective process; or the
> existence of circumstances rendering such process
> ineffective to protect the rights of the prisoner."  28
> U.S.C. § 2254(b)(1).

Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001).

A two-step analysis is used to determine whether a

claim has been exhausted:

> First, the petitioner must have fairly presented to an
> appropriate state court the same federal constitutional
> claim that he now urges upon the federal courts . . . .
>
> Second, having presented his federal constitu-
> tional claim to an appropriate state court, and having
> been denied relief, the petitioner must have utilized
> all available mechanisms to secure [state] appellate
> review of the denial of that claim.

Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (citations

omitted), overruled on other grounds, Daye v. Attorney Gen., 696

F.2d 186, 191 (2d Cir. 1982) (en banc); see also Baldwin v.

Reese, supra, 541 U.S. at 29; McKethan v. Mantello, 292 F.3d 119,

122 (2d Cir. 2002), quoting Ramirez v. Attorney Gen., 280 F.3d

87, 94 (2d Cir. 2001); accord Powell v. Greiner, 02 Civ. 7352

(LBS), 2003 WL 359466 at *1 (S.D.N.Y. Feb. 18, 2003) (Sand,

D.J.); Alston v. Senkowski, 210 F. Supp. 2d 413, 417 (S.D.N.Y.

2002) (Stein, D.J.); Boyd v. Hawk, 94 Civ. 7121 (DAB), 1996 WL

406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J.).

15

To satisfy the first step of the exhaustion test, a
habeas petitioner must fairly present his federal claim to the
state courts.  <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Cox v.
Miller</u>, 296 F.3d 89, 99 (2d Cir. 2002); <u>Galarza v. Keane</u>, 252
F.3d 630, 638 (2d Cir. 2001); <u>Daye v. Attorney Gen.</u>, <u>supra</u>, 696
F.2d at 191.  In <u>Daye v. Attorney Gen.</u>, <u>supra</u>, 696 F.2d at 194,
the Court of Appeals set forth the methods by which a federal
claim can be fairly presented to a state court where there has
been no express reliance on a provision of the federal Constitu-
tion:

> [T]he ways in which a state defendant may fairly pres-
> ent to the state courts the constitutional nature of
> his claim, even without citing chapter and verse of the
> Constitution, include (a) reliance on pertinent federal
> cases employing constitutional analysis, (b) reliance
> on state cases employing constitutional analysis in
> like fact situations, (c) assertion of the claim in
> terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a
> pattern of facts that is well within the mainstream of
> constitutional litigation.

<u>See</u> <u>also</u> <u>Strogov v. Attorney Gen.</u>, 191 F.3d 188, 191 (2d Cir.
1999) (a habeas petitioner has fairly presented his claim when he
or she has "informed [the State] courts of 'all the essential
factual allegations' and 'essentially the same legal doctrine
[asserted] in [the] federal petition'") (citation omitted).

To satisfy the second step of the analysis, "a peti-
tioner must present his federal constitutional claims to the

highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991), citing Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam); see also O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999).  Exhaustion requires that a prisoner must even pursue discretionary state appellate remedies before he can raise a claim in a habeas corpus proceeding.  Baldwin v. Reese, supra, 541 U.S. at 29; O'Sullivan v. Boerckel, supra, 526 U.S. at 846-48.

Unexhausted claims are deemed exhausted if the petitioner no longer has any remedy available in the state courts. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Nevarez v. Artuz, 99 Civ. 2401 (LBS), 2000 WL 718450 at *3 (S.D.N.Y. June 5, 2000) (Sand, D.J.); Hurd v. Stinson, 99 Civ. 2426 (LBS), 2000 WL 567014 at *7 (S.D.N.Y. May 10, 2000) (Sand, D.J.).

> This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 735 n.1(1991).

Aparicio v. Artuz, supra, 269 F.3d at 90.

In the absence of a showing of cause for and prejudice from the failure to raise the claim in conformity with state

procedural requirements, or a fundamental miscarriage of justice,
such a claim, although deemed exhausted, will be forfeited and
barred from serving as the basis for habeas relief.

> Where a petitioner has failed to present his or
> her federal claims to the state courts in accordance
> with state procedural requirements, and no longer has
> recourse to state review, he or she will be found to
> have met the exhaustion requirement of 28 U.S.C. §
> 2254(b); however, the claims will be subject to proce-
> dural bar in this court. See Coleman v. Thompson, 501
> U.S. 722 (1991); Castille v. Peoples, 489 U.S. 346, 350
> (1989); Teague v. Lane, 489 U.S. 288, 297-98 (1989).
> If there is such a procedural bar, the claim cannot be
> heard absent a showing of cause for the procedural
> default and prejudice. Wainwright v. Sykes, 433 U.S.
> 72 (1977).

Norwood v. Hanslmaier, 93 CV 3748 (NG), 1997 WL 67669 at *2
(E.D.N.Y. Feb. 11, 1997); accord Parker v. Ercole, 582 F. Supp.
2d 273, 290 (N.D.N.Y. 2008); Garner v. Superintendent of Upstate
Corr. Fac., No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907 at *12
(N.D.N.Y. Sept. 26, 2007).

In addition to the procedural bar that can result from
a failure to exhaust a claim in accordance with state law, a
habeas petitioner's constitutional claim can be procedurally
barred if it has not been asserted in state court proceedings in
accordance with state procedural requirements and the state
courts rely on that violation of state procedural requirements to
reject the claim. As the Court of Appeals for the Second Circuit
has explained:

18

The independent and adequate state ground doctrine
first arose in the context of direct appeals to the
Supreme Court from final judgments of the state courts.
Under that doctrine the Supreme Court "will not review
a question of federal law decided by a state court if
the decision of that court rests on a state law ground
that is independent of the federal question and ade-
quate to support the judgment." Coleman v. Thompson,
501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
(1991).  Moreover, "[t]his rule applies whether the
state law ground is substantive or procedural." Id.

*     *     *

The doctrine also applies in the context of fed-
eral courts reviewing applications for a writ of habeas
corpus . . . .  [I]nvoking principles of comity and
federalism . . . federal habeas courts faced with an
independent and adequate state ground of decision defer
in the same manner as does the Supreme Court on direct
review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Beard

v. Kindler, 558 U.S. 53, 55 (2009) ("A federal habeas court will

not review a claim rejected by a state court if the decision of

[the state] court rests on a state law ground that is independent

of the federal question and adequate to support the judgment.")

(inner quotations omitted); Cone v. Bell, 556 U.S. 449, 465

(2009) (same); Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir.

2010) (same); Cotto v. Herbert, 331 F.3d 217, 238-39 (2d Cir.

2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002), citing

Coleman v. Thompson, supra, 501 U.S. at 729-31 ("[I]t is settled

law that an independent and adequate state law ground for a state

court conviction cannot be disturbed on habeas."); Brown v. State

19

of New York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2
(E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus petitioner
defaults a federal claim in state court . . . by failing to
preserve the claim for state appellate review . . . , the inde-
pendent and adequate state ground doctrine bars federal habeas
corpus review."); Rivera v. Moscicki, 03 Civ 5810 (SAS), 2005 WL
2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A
federal court generally may not review a state court decision
that expressly relies on a procedural default as an independent
and adequate state ground for dismissal.").

        Dismissal of a claim on the ground that consideration
of the merits is precluded by an adequate and independent state
procedural ground is appropriate where the last reasoned state
court decision expressly relies on a state procedural bar:

> In Harris [v. Reed, 489 U.S. 255 (1989)], the Court
> held that "a procedural default does not bar consider-
> ation of a federal claim on either direct or habeas
> review unless the last state court rendering a judgment
> in the case clearly and expressly states that its
> judgment rests on a state procedural bar." Harris, 489
> U.S. at 263, 109 S.Ct. 1038 (internal quotation marks
> omitted).  We apply the Long/Harris presumption to the
> last "reasoned state judgment" . . . .  See Ylst v.
> Nunnemaker, 501 U.S. 797, 803(1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000); see also
Galarza v. Keane, supra, 252 F.3d at 637 ("We have repeatedly
stated that in order for federal habeas review to be procedurally

barred, a state court must actually have relied on a procedural bar as an independent basis for its disposition of the case, and the state court's reliance on state law must be unambiguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar as an independent basis for its decision, a claim will be procedurally barred on federal habeas review even where a state court addresses the merits of the claim in the alternative.  As the Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Harris, 489 U.S. at 264 n.10, 109 S.Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding"); Wedra v. Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993).

Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); see also Robles v. Superintendent of Elmira Fac., 07 Civ. 596 (LBS), 2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.); Ashley v. Burge, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5 (S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

However, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a state procedural ground, federal habeas corpus review will not be

precluded if (1) the state procedural ground is not independent
and adequate, see Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir.
2006); Monroe v. Kuhlman, 433 F.3d 236, 241-42 (2d Cir. 2006);
Cotto v. Herbert, supra, 331 F.3d at 238-39; (2) there is cause
for and prejudice from petitioner's failure to assert his claims
in accordance with state procedural law, or (3) a failure to
consider the claim would result in a fundamental miscarriage of
justice.  Schlup v. Delo, 513 U.S. 298, 324-27 (1995); Coleman v.
Thompson, supra, 501 U.S. at 748-50; Harris v. Reed, 489 U.S.
255, 262 (1989); Green v. Travis, 414 F.3d 288, 294 (2d Cir.
2005).  To establish a fundamental miscarriage of justice, a
habeas petitioner must show that a constitutional violation
probably resulted in his conviction despite his actual innocence.
United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collat-
eral-review jurisprudence, the term 'miscarriage of justice'
means that the defendant is actually innocent."); Sweet v.
Bennett, 353 F.3d 135, 141 (2d Cir. 2003) ([A] "habeas petitioner
may avoid [a procedural] default . . . by showing . . . that
failure to consider the claim will result in miscarriage of
justice, i.e., the petitioner is actually innocent.").

2.   Application of the
     Foregoing Principles
     to the Facts of this Case


     a.   Petitioner's Missing Witness
          Claim is Procedurally Barred


Application of the foregoing principles demonstrates

that petitioner's due process claim concerning the Trial Court's

failure to issue a missing witness instruction is procedurally

barred.[7]

          Petitioner did not expressly raise this claim as a

federal claim in state court, and he cited no federal authority

in his state court submissions to the New York Appellate Division

on direct appeal (Pet. App. Br., annexed as Exhibit A to Pet., at

18-28).  Nor did petitioner cite state cases that discuss federal

law or engage in constitutional analysis.  Finally, petitioner's

factual summary does not normally constitute the assertion of a

constitutional claim.  Nicholas v. Conway, 10 Civ. 3852 (KBF),

2012 WL 2125918 at *5 (S.D.N.Y. June 11, 2012)(Forrest, D.J.);

────────────────────

          [7]I assume, without deciding, that a state court's failure to
give a missing witness instruction can constitute a violation of
the Fourteenth Amendment's Due Process Clause.  I note, however,
that several judges in the Circuit have reached the opposite
conclusion.  See, e.g., Guerrero v. Payant, 08-CV-03062 (JFB),
2010 WL 2545818 at *23 (E.D.N.Y. June 21, 2010); Kirkby v.
Filion, 644 F. Supp. 2d 299, 307 (W.D.N.Y. 2009); Green v.
McCray, 02 Civ. 9332 (JSM), 2003 WL 21688238 at *2 (S.D.N.Y. July
18, 2003) (Martin, D.J.).

Guerrero v. Payant, supra, 2010 WL 2545818 at *23; see also Cupp v. Naughton, 414 U.S. 141, 146 (1973).  Consequently, petitioner has not fairly presented this claim in state court.

Because petitioner no longer has any remedy available in state court, I deem this claim exhausted and procedurally barred.  As the Court of Appeals for the Second Circuit explained in Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000):

> New York permits only one application for direct re-
> view, see N.Y. Rules of Court, Court of Appeals, §
> 500.10(a) (McKinney 1999), and having failed to raise
> the claim on direct appeal [petitioner] may not seek
> collateral relief in New York courts, see N.Y. Crim.
> Proc. Law. § 440.10(2)(c) (McKinney 1994); Strogov v.
> Attorney Gen., 191 F.3d 188, 193 (2d Cir. 1999); Wash-
> ington, 996 F.2d at 1447; Grey, 933 F.2d at 120.
> Because [petitioner] failed to raise his claim in the
> ordinary appellate process and can no longer do so, it
> is procedurally defaulted.

See also Jones v. Keane, 329 F.3d 290, 296 (2d Cir. 2003); Aparicio v. Artuz, supra, 269 F.3d at 90-91; Black v. McGinnis, 99 Civ. 0755 (MBM), 2001 WL 209916 at *4 (S.D.N.Y. Mar. 1, 2001) (Mukasey, D.J.).

As noted above, petitioner could theoretically overcome this procedural bar by demonstrating either (1) cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law or (2) that a failure to consider the claim would result in a fundamental miscarriage of

justice.  <u>Schlup v. Delo</u>, <u>supra</u>, 513 U.S. at 324-27; <u>Coleman v.</u>
<u>Thompson</u>, <u>supra</u>, 501 U.S. at 748-50; <u>Harris v. Reed</u>, <u>supra</u>, 489
at 262; <u>Green v. Travis</u>, <u>supra</u>, 414 F.3d at 294.  Petitioner has
not, however, attempted to meet either standard.

> b.   Petitioner's Claim that His Conviction
>      Was Based on Legally Insufficient
>      <u>Evidence Is Procedurally Barred</u>

Petitioner next claims that his conviction "is based
upon evidence that did not establish his guilt beyond a reason-
able doubt," because the only eyewitness, NR, provided testimony
"that was largely uncorroborated and vague" and "there was no
physical evidence tying [petitioner] to the allegations" (Pet.
App. Br., annexed as Exhibit A to Pet., at 36, <u>citing</u> U.S. Const.
Amend. XIV).  Respondent argues that petitioner did  not fairly
present this contention as a federal claim to the Appellate
Division because he cited to the U.S. Constitution within a
discussion of a state law claim that his conviction was against
weight of the evidence and did so without any elaboration of
applicable federal law.  Respondent contends that petitioner's
state law claim is not cognizable in federal court, and to the
extent petitioner's appellate brief fairly presented a federal
claim, it is unexhausted because petitioner failed to raise it in

his application for leave to the New York Court of Appeals (Opp'n Mem. (Docket Item 17) at 31 n.23).

Petitioner's appellate brief argues that his conviction is against the weight of the evidence and includes conclusory language referring to the sufficiency of the evidence (Pet. App. Br., annexed as Exhibit A to Pet., at 36).  Petitioner's supplemental submissions also discuss the weight of the evidence and the sufficiency of the evidence (see Mem. of Law in Reply of People's Answer to Pet. for a Writ of Habeas Corpus, (Docket Item 24)("Pet. Reply") at 22-25).

To the extent that petitioner is asserting there was insufficient evidence to sustain his conviction, I conclude that it is unexhausted because petitioner did not assert it in his application for leave to appeal to the New York Court of Appeals. Petitioner's application to that court only requested that the court "grant leave in Pablo Rodriguez's case to answer two critical, and related questions.  First . . . is the defense entitled to a missing witness charge . . . .  And, second, . . . did the prosecution improperly shift the burden of proof to the defense, and therefore deprive Mr. Rodriguez of a fair trial" (Letter to the Honorable Jonathan Lippman, dated December 21, 2009, annexed as Exhibit A to Opp'n Answer, at 1).

26

Because petitioner did not raise his sufficiency of the evidence claim before the New York Court of Appeals, it is unexhausted.  See Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005) ("Generally we assume that the [New York] Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court for review.") (internal quotations and citations omitted); see also Gillespie v. Miller, 04 Civ. 295 (LAP)(AJP), 2004 WL 1689735 at *11 & n.23 (S.D.N.Y. July 29, 2004) (Report & Recom- mendation) (Peck, M.J.), adopted in unpublished opinion, (S.D.N.Y. Oct. 28, 2004) (Preska, D.J.); Blue v. Duncan, 03 Civ. 1202 (LTS)(GWG), 2004 WL 1172793 at *6-*7 (S.D.N.Y. May 27, 2004) (Report & Recommendation) (Gorenstein, M.J.), adopted in unpub- lished opinion, (S.D.N.Y. Aug. 29, 2005) (McMahon, D.J.); Hincapie v. Greiner, 155 F. Supp. 2d 66, 68 (S.D.N.Y. 2001) (Cedarbaum, D.J.); Snead v. Artuz, 99 Civ. 2406 (DC), 2001 WL 199409 at *3-*4 (S.D.N.Y. Feb. 28, 2001) (Chin, D.J.).

Because petitioner no longer has any remedy available in state court, this claim must also deemed exhausted and proce- durally barred absent a showing of cause and prejudice or actual innocence.  Petitioner has not attempted to meet either standard. Thus his sufficiency claim provides no basis for habeas relief.

27

To the extent that petitioner contends that the verdict is against the weight of the evidence, he has asserted a purely state-law claim that is not cognizable in a federal habeas corpus proceeding.

As explained in Correa v. Duncan, supra, 172 F. Supp. 2d at 381:

> Correa argues that the guilty verdict was against the weight of the evidence. This claim is distinct from an attack on a verdict based on the legal suffi-ciency of the evidence. A "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (1979) (Fourteenth Amendment requires record evidence to reasonably support a finding of guilt beyond a reason-able doubt); [s]ee People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987) (weight of the evidence is based on court's factual review power; sufficiency of evidence claim based on the law). Accordingly, the Court is precluded from considering the claim. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (habeas corpus review is not avail-able where there is simply an alleged error of state law).

Accord Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (Sweet, D.J.); see also Feliz v. Conway, 378 F. Supp. 2d 425, 430 n.3 (S.D.N.Y. 2005) (Patterson, D.J.); Keane v. N.Y. State Div. of Parole, 04 CV 2070 (CBA), 2005 WL 1594200 at *2 n.1

(E.D.N.Y. July 5, 2005); <u>Brown v. Filion</u>, 03 Civ. 5391 (DLC)

(GWG), 2005 WL 1388053 at *12 (S.D.N.Y. June 13, 2005) (Report &

Recommendation) (Gorenstein, M.J.), <u>adopted</u> <u>at</u>, 2005 WL 2159675

(S.D.N.Y. Sept. 6, 2005) (Cote, D.J.).

        c.    The Claims Asserted in
              Petitioner's Motion to
              <u>Vacate Are Procedurally Barred</u>

As noted above, petitioner asserted five claims in his

Section 440.10 motion:  (1) the prosecution's failure to call an

eyewitness violated his Sixth Amendment right to cross-examine

recognized in <u>Melendez-Diaz v. Massachusetts</u>, <u>supra</u>, 557 U.S.

305; (2) petitioner was required to subpoena an eyewitness in

violation of his right to confrontation recognized in <u>v. Massa-

chusetts</u>, <u>supra</u>, 557 U.S. 305; (3) the Trial Court improperly

excluded evidence that a third party committed a crime; (4) the

jury instructions were deficient and (5) his trial counsel

provided him with ineffective assistance (Mot. to Vacate, annexed

as Exhibit B to Pet., at 4-5).  Petitioner attempts to assert

these same claims here.  Because the Trial Court resolved the

claims in petitioner's motion to vacate on state procedural

grounds, I must reject them here as procedurally barred.

The Trial Court rejected petitioner's motion to vacate,

finding that "all the issues [petitioner] now raises were either

raised previously on appeal or could have been raised on appeal," and citing New York Criminal Procedure Law Section 440.10(2)(a) and (c), which, respectively, preclude relief through a motion to vacate based on claims that were or could have been raised on

direct review[8] (Decision, dated July 22, 2010, annexed as Exhibit C to Opp'n Answer, at 3).

_____

[8]New York Criminal Procedure Law Section 440.10(2) provides, in pertinent part:

> [T]he court must deny a motion to vacate a judgment when:
>
> (a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue; or
>
>          *    *    *
>
> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .

The Trial Court's reliance on Section 440.10(2)(a) is puzzling because none of the claims raised in petitioner's 440.10 motion were actually raised on his direct appeal (Compare Pet. App. Br., annexed as Exhibit A to Pet., at i, with Mot. to Vacate, annexed as Exhibit B to Pet., at 4-5). However, there can be no serious question that the five claims raised in petitioner's 440.10 motion were based on the record of his trial and, therefore, could have been raised on direct appeal. Thus, the Trial Court's reliance on Section 440.10(2)(c) was clearly correct.

31

Because the Appellate Division subsequently denied petitioner leave to appeal without opinion, (Certificate Denying Leave, dated December 15, 2010, annexed as Exhibit D to Opp'n Answer, at 1), the Trial Court's decision was the "last state court rendering a judgment" on these claims.  Harris v. Reed, supra, 489 U.S. at 262; see Ylst v. Nunnemaker, supra, 501 U.S. at 803 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").  Thus, the Trial Court's decision resting on procedural grounds, therefore, procedurally bars these claims from federal habeas review.

There can be no question that New York Criminal Procedure Law Section 440.10(2)(c) constitutes an adequate and independent ground for the denial of petitioner's claims.  Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008); Aparicio v. Artuz, supra, 269 F.3d at 93; Davis v. Mantello, supra, 42 F. App'x at 490; Felton v. Muzzuca, 98 Civ. 4567 (RJS), 2012 WL 4462009 at *7 (S.D.N.Y. Sept. 27, 2012)(Sullivan, D.J.).  Accordingly, petitioner's claims in his motion to vacate are all procedurally barred absent a showing of cause and prejudice, or actual innocence.  Petitioner has not, however, attempted to meet either

32

standard.  Thus, petitioner's fourth, fifth, sixth, seventh and
eighth claims provide no basis for habeas relief.

      B.    Standard of Review
                  for Exhausted Claims

      Before a federal court can issue a writ of habeas
corpus, a petitioner must comply with a "difficult to meet[] . .
. and highly deferential standard for evaluating state-court
rulings, which demands that state-court decisions be given the
benefit of the doubt."  Cullen v. Pinholster, --- U.S. ---, ---,
131 S.Ct. 1388, 1398 (2011)(citations and internal quotation
marks omitted).  Specifically, habeas relief may be granted only
when the state court's decision "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States."  28 U.S.C. § 2254(d)(1); see Gueits v.
Kirkpatrick, 612 F.3d 118, 122 (2d Cir. 2010); Dolphy v.
Mantello, 552 F.3d 236, 238 (2d Cir. 2009).

      The Supreme Court has explained these alternative
standards as follows:

> First, we have explained that a decision by a
> state court is "contrary to" our clearly established
> law if it "applies a rule that contradicts the govern-
> ing law set forth in our cases" or if it "confronts a
> set of facts that are materially indistinguishable from
> a decision of this Court and nevertheless arrives at a

result different from our precedent." <u>Williams v.
Taylor</u>, 529 U.S. 362, 405-06 (2000).  See also <u>Early v.
Packer</u>, 537 U.S. 3, 7-8 (2002) (<u>per</u> <u>curiam</u>). . . .

Second, [petitioner] can satisfy § 2254(d) if he
can demonstrate that the [State] Court's decision
involved an "unreasonable application" of clearly
established law.  As we have explained:

"[A] federal habeas court may not issue the writ
simply because that court concludes in its independent
judgment that the state-court decision applied [a
Supreme Court case] incorrectly.  See <u>Bell v. Cone</u>, 535
U.S. 685, 698-699 (2002); <u>Williams</u>, <u>supra</u>, at 411.
Rather, it is the habeas applicant's burden to show
that the state court applied [that case] to the facts
of his case in an objectively unreasonable manner."
<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) (<u>per</u>
<u>curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington</u>

<u>v. Sarausad</u>, 555 U.S. 179, 190-91 (2009); <u>Brown v. Payton</u>, 544

U.S. 133, 141 (2005); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63,

70-72 (2003); <u>Bierenbaum v. Graham</u>, <u>supra</u>, 607 F.3d at 47-48; <u>Hoi</u>

<u>Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v.</u>

<u>Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>,

283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable applica-

tion" set forth above, a state court may unreasonably apply

Supreme Court precedent "if the state court unreasonably extends

a legal rule established by the Supreme Court or if it unreason-

ably fails to extend a legal rule to a context in which the rule

reasonably should apply."  <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-

97 (2d Cir. 2005).  "Unreasonableness is determined by an 'objec-
tive' standard."  Gersten v. Senkowski, 426 F.3d 588, 607 (2d
Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000);
Hawkins v. Costello, supra, 460 F.3d at 242-43.

   Both the "contrary to" and "unreasonable application"
clauses "restrict[] the source of clearly established law to [the
Supreme] Court's jurisprudence."  Williams v. Taylor, supra, 529
U.S. at 412; accord Parker v. Matthews, --- U.S. ---, ---, 132
S.Ct. 2148, 2155-56 (2012).  "[C]learly established [f]ederal law
. . . refers to the holdings, as opposed to the dicta, of th[e]
Court's decisions as of the time of the relevant state-court
decision."  Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal
quotation marks omitted); accord Thaler v. Haynes, 559 U.S. 43,
47 (2010) ("A legal principle is 'clearly established' within the
meaning of this provision only when it is embodied in a holding
of this Court."); see Greene v. Fisher, --- U.S. ---, ---, 132
S.Ct 38, 44 (2011).  "That federal law, as defined by the Supreme
Court, may be either a generalized standard enunciated in the
[Supreme] Court's case law or a bright-line rule designed to
effectuate such a standard in a particular context."  Kennaugh v.
Miller, 289 F.3d 36, 42 (2d Cir. 2002); accord Davis v. Grant,
532 F.3d 132, 140 (2d Cir. 2008).  "A petitioner can not win
habeas relief solely by demonstrating that the state court

unreasonably applied Second Circuit precedent." <u>Yung v. Walker</u>, 341 F.3d 104, 110 (2d Cir. 2003); <u>accord</u> <u>DelValle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002).

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. <u>Lockyer v. Andrade</u>, <u>supra</u>, 538 U.S. at 75 (The "objectively unreasonable" and "clear error" standards "are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonable-ness."); <u>Davis v. Grant</u>, 532 F.3d 132, 140 (2d Cir. 2008); <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 248. However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" <u>Brisco v. Ercole</u>, 565 F.3d 80, 88 (2d Cir. 2009), <u>quoting</u> <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the mer-its." <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 230; <u>see</u> <u>also</u> <u>Ryan v. Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its

merits."); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir.
2001).

    The Second Circuit has instructed habeas courts to
"classify" a state court decision as either:  (1) "fairly appear-
ing to rest primarily on federal law or to be interwoven with
federal law"; or (2) "fairly appearing to rest primarily on state
procedural law."  <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145.  "If
the state court's decision falls into the first category, and
does not 'contain a clear statement of reliance on a state
procedural bar,' the decision must be treated as having been made
on the merits."  <u>Mateo v. Fishkill Corr. Fac.</u>, CV-04-3420 (DGT),
2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), <u>quoting</u> <u>Jimenez</u>
<u>v. Walker</u>, <u>supra</u>, 458 F.3d at 138.  To make this classification,
courts in this circuit examine "(1) the face of the state-court
opinion, (2) whether the state court was aware of a procedural
bar, and (3) the practice of state courts in similar circum-
stances."  <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145 n.16.

    It is well settled that a summary state court decision
without opinion is presumed to have adjudicated each federal
claim on the merits.  <u>Harrington v. Richter</u>, --- U.S. ---, ---,
131 S. Ct. 770, 784 (2011) ("Where a state court's decision is
unaccompanied by an explanation, the habeas petitioner's burden
still must be met by showing there was no reasonable basis for

the state court to deny relief."); Johnson v. Williams, --- U.S. ---, ---, 133 S. Ct. 1088, 1091 (2013); Hawthorne v. Schneiderman, 695 F.3d 192, 196 (2d Cir. 2012).

I conclude, upon examining the three classification factors set forth by the Second Circuit in Jimenez v. Walker, that the Appellate Division adjudicated the merits of petitioner's prosecutorial misconduct claim when it found that "[t]he court's instructions were sufficient to prevent the defendant from being prejudiced by those portions of the prosecutor's summation that allegedly shifted the burden of proof, and a mistrial is not warranted." People v. Rodriguez, supra, 67 A.D.3d at 417, 889 N.Y.S.2d at 15-16. This language does address the substance of petitioner's claim and does not remotely suggest that the decision rests on a procedural basis. The fact that the Appellate Division did not explicitly refer to the Fourteenth Amendment or relevant federal case law does not alter my conclusion. See Sellan v. Kuhlman, supra, 261 F.3d at 312 (noting that a state court decision may be on the merits "even if the state court does not explicitly refer to . . . relevant federal case law"); Cheng Kang Shi v. Connolly, 06 CV 2093 (NG)(RLM), 2007 WL 4380276 at *6 (E.D.N.Y. Dec. 13, 2007) ("AEDPA's deferential standard of review applies even if the state court did not

explicitly refer to either the federal claim or to relevant federal case law.")(internal quotation marks omitted).

I also conclude that the Appellate Division adjudicated petitioner's ineffective assistance of appellate counsel claim on the merits.  The Appellate Division denied petitioner's motion without opinion.  <u>People v. Rodriguez</u>, Mot. No. M-1207, 2011 N.Y. Slip Op. 86901(U) (1st Dep't Oct. 18, 2011).  The New York Court of Appeals subsequently denied petitioner's application for leave to appeal, also without opinion (Certificate, dated March 8, 2012, annexed as Exhibit F to Opp'n Answer, at 1).  The claim was, therefore, presumptively resolved on the merits.

Because the Appellate Division adjudicated petitioner's prosecutorial misconduct claim and ineffective assistance of appellate counsel claim on the merits, the Appellate Division's decision on these claims is entitled to the deferential standard of review set forth in 28 U.S.C. § 2254(d).

C.   Petitioner's Prosecutorial
     <u>Misconduct Claim</u>

Petitioner claims that he was denied his right to a fair trial when the prosecutor asserted in summation that the petitioner could have put forth evidence in his defense, thereby shifting the burden of proof (Pet. App. Br., annexed as Exhibit A

39

to Pet., at 32).  Respondent argues that these comments did not
shift the burden of proof, and in any event, the Trial Court's
curative instructions neutralized any harm the comments may have
caused (Opp'n. Mem. (Docket Item 17) at 26).

A prosecutor's comments or argument during summation
will justify habeas relief only when they "so infect[] the trial
with unfairness as to make the resulting conviction a denial of
due process." Parker v. Mathews, supra, 132 S. Ct. at 2153,
quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986); accord
Greer v. Miller, 483 U.S. 756, 765 (1987)("To constitute a due
process violation, the prosecutorial misconduct must be 'of
sufficient significance to result in the denial of the defen-
dant's right to a fair trial.'"), quoting United States v.
Bagley, 473 U.S. 667, 676 (1985); Moore v. Conway, 476 F. App'x
928, 930 (2d Cir. 2012) ("The appropriate standard of review for
a claim of prosecutorial misconduct on a writ of habeas corpus is
the narrow one of due process, and not the broad exercise of
supervisory power."), quoting Bossett v. Walker, 41 F.3d 825, 829
(2d Cir. 1994).

In order to justify federal habeas relief, a petitioner
"must demonstrate that he suffered actual prejudice because the
prosecutor's comments during summation had a substantial and
injurious effect or influence in determining the jury's verdict.

Habeas relief is not appropriate when there is merely a 'reason-
able possibility' that trial error contributed to the verdict."
Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994), quoting
Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Escobar v.
Senkowski, 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939 at *16
(S.D.N.Y. May 26, 2005)(same), quoting Tankleff v. Senkowski, 135
F.3d 235, 252 (2d Cir. 1998).

      Courts in this Circuit have considered the following
non-exhaustive list of factors in assessing whether prosecutorial
misconduct during summation resulted in actual prejudice to a
criminal defendant:  "(1) the severity of the prosecutor's
conduct; (2) what steps, if any, the Trial Court may have taken
to remedy any prejudice; and (3) whether the conviction was
certain absent the prejudicial conduct."  Bentley v. Scully,
supra, 41 F.3d at 824, citing Gonzalez v. Sullivan, 934 F.2d 419,
424 (2d Cir. 1991); see also United States v. Millar, 79 F.3d
338, 343 (2d Cir. 1996); Floyd v. Meachum, supra, 907 F.2d at
355; United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981).
With these standards in mind, I turn to the two specifications of
prosecutorial misconduct petitioner asserts.

      Petitioner argues that the prosecution twice improperly
commented on his ability to call a witness:

| [People]: | The defendant in this case has no bur-den, no burden whatsoever, no burden to call any witnesses.  The burden is solely upon the prosecution, the People of the State of New York and I've em-braced that burden.  I ask you to hold me to that burden.  But although he has no burden, he has the power to call witnesses -- |
|---|---|
| [Defense]: | Objection |
| The Court: | Sustained.  The jury is to disregard that . . . . |
| | *    *    * |
| [People]: | The defendant has a right to a trial, a right to have witnesses called, the right to cross-examine witnesses and I submit, ladies and gentlemen, he has received all of the protection that our Constitution affords him, he has been guaranteed and that evidence has been presented, a jury has heard this evi-dence fairly and render [sic] a verdict solely on the evidence. |

(Tr. 454, 479)(emphasis added).

The prosecutor's reminding the jury that a defendant has offered no evidence is not improper where the prosecutor simultaneously reminds the jury the burden of proof remains with the People.  United States v. Millar, supra, 79 F.3d at 344; United States v. Cruz, 797 F.2d 90, 93 n.1 (2d Cir. 1986); United States v. Bubar, 567 F.2d 192, 199 (2d Cir. 1977)("[The prosecu-tion is] entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's

42

case, . . . as well as his failure to support his own factual theories with witnesses."). Here, the prosecution reminded the jury numerous times that the prosecution had the burden of proof, both immediately before, and immediately after its comment that petitioner had the ability to call witnesses (Tr. 454, 478-79). Furthermore, the prosecution's commentary on petitioner's ability to call witnesses was arguably a response to defense counsel's speculation that CR committed the alleged abuse during his summation (Tr. 509-10).[9] United States v. Bautista, 23 F.3d 726, 733 (2d Cir. 1994) (noting that when defense counsel dabbles in speculation, "the government may comment on a defendant's failure to call witnesses to support his factual theories."); United States v. McDermott, 918 F.2d 319, 328 (2d Cir. 1990).

Even assuming, arguendo, that the prosecutor's statements were improper, when viewed in the context of the defense argument that preceded them and given the mitigating factors discussed below, the comments did not substantially prejudice petitioner and, thus, do not warrant habeas relief. United States v. Modica, supra, 663 F.2d at 1181 ("A prosecutor's improper summation results in a denial of due process when the

---

[9]Defense counsel stated in his summation: "Have you gotten a full factual basis in this case? The answer is no . . . . How can the prosecutor's office present a case without [CR]." (Tr. 426).

improper statements cause substantial prejudice to the defen-
dant.").

    First, the prosecutor's conduct was not severe.  The
comments appear to have been made extemporaneously and not as
part of a calculated plan to entice the jury to draw an inference
that petitioner was under a burden to produce evidence.  United
States v. Nersesian, supra, 824 F.2d at 1329.

    Second, they were isolated statements in a lengthy
summation, Donnelly v. DeChristoforo, supra, 416 U.S. at 646
("isolated passages" of prosecutor's argument, while improper,
did not merit habeas relief); Escobar v. Senkowski, supra, 2005
WL 1307939 at *15 ("[A] prosecutor's improper comments during
summation must be more than short and fleeting, but must instead
be so numerous and, in combination, so prejudicial that a new
trial is required.")(internal quotation marks omitted), and were
qualified with a restatement that the burden of proof lies with
the prosecution.  United States v. Bautista, supra, 23 F.3d at
733; United States v. Parker, 903 F.2d 91, 98-99 (2d Cir. 1990).

    Third, the Trial Judge instructed the jury that the
prosecution alone had the burden of proof and that "the defendant
is not required to prove or disprove anything" (Tr. 483, 489-90,
491-92).  A jury is "presumed to follow [the court's] instruc-
tions[,]" Richardson v. Marsh, 481 U.S. 200, 211 (1987), and the

44

record discloses no reason why this presumption should not apply here.  See Wicks v. Miller, 05 Civ. 5341 (JGK), 2007 WL 1434992 at *6 (S.D.N.Y. May 15, 2007) (Koeltl, D.J.).

Accordingly, the Appellate Division's decision that the prosecutor's comments during summation did not deprive petitioner of his due process right to a fair trial is not contrary to or an unreasonable application of clearly established Supreme Court precedent.

D.   Petitioner's Ineffective-
     Assistance-of-Appellate-Counsel Claim

1.   Legal Standards
     Applicable to Petitioner's Claim

In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in Strickland v. Washington, 466 U.S. 668, 686-87 (1984).

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*     *     *

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defen-dant must show that counsel's performance was defi-

45

cient.  This requires showing that counsel made errors
so serious that counsel was not functioning as the
"counsel" guaranteed the defendant by the Sixth Amend-
ment.  Second, the defendant must show that the defi-
cient performance prejudiced the defense.  This re-
quires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose
result is reliable.  Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid

v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.

United States, 202 F.3d 486, 488 (2d Cir. 2000); Guerrero v.

United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.

United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 84-85 (2d Cir. 1998).  This same standard

applies to claims of ineffective assistance of appellate counsel.

Mercer v. Herbert, 133 F. Supp. 2d 219, 238 (W.D.N.Y. 2001) ("A

claim for ineffective assistance of appellate counsel is evalu-

ated upon the same standard as is a claim of ineffective assis-

tance of trial counsel.").  See also Mayo v. Henderson, 13 F.3d

528, 533 (2d Cir. 1994); Hernandez v. Edwards, 98 Civ. 6704

(MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001) (Mukasey,

D.J.).

In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

46

professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).

In the appellate context, "it does not suffice 'for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.'" McKee v. United States, supra, 167 F.3d at 106, quoting Mayo v. Henderson, supra, 13 F.3d at 533. "Rather, it is the hallmark of effective appellate advocacy to choose wisely which claims are brought on appeal." Fletcher v. Mann, 956 F. Supp. 168, 173 (N.D.N.Y. 1997) (internal quotation marks omitted). Thus,

> [i]n assessing the reasonableness of the arguments posed on appeal versus other possible nonfrivolous arguments, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal . . . . Generally, only when ignored issues "are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

Larrabee v. Smith, 14 F. Supp. 2d 235, 239 (N.D.N.Y. 1998), quoting Mayo v. Henderson, supra, 13 F.3d at 533; see Torres v. Irvin, 33 F. Supp. 2d at 257, 266 (S.D.N.Y. 1998) (Cote, D.J.).

"To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probabil-

ity that his claim would have been successful before the state's highest court." Mayo v. Henderson, supra, 13 F.3d at 534, quoting Strickland v. Washington, supra, 466 U.S. at 694. Analogizing to the trial context, "[a] reasonable probability [in the appellate context] is one sufficient to undermine confidence in the outcome of the . . . appeal." Aparicio v. Artuz, supra, 269 F.3d at 95.

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. Strickland v. Washington, supra, 466 U.S. at 697.

> 2.   Application of the Foregoing
>      Principles to Petitioner's Claims

Petitioner contends his appellate counsel was ineffective for failing to raise six claims:  (1) the Trial Court's did not comply with N.Y. Crim. Proc. L. § 310.30; (2) the Trial Court's jury charge improperly removed an element of the charged crime; (3) NR's behavior on the witness stand violated petitioner's Sixth Amendment right to confrontation; (4) the Trial Court's exclusion of evidence implicating a third-party's guilt prevented petitioner from presenting a complete defense; (5) the Court's admission of petitioner's prior bad acts violated the due

48

process clause and (6) his trial counsel was ineffective for
failing to consult or retain a psychological expert (Pet. Habeas
Mem., annexed as Exhibit D to Pet., at 1-16).  As explained
below, the first five grounds of petitioner's ineffective-
assistance-of-appellate counsel claim lack merit because his
trial counsel waived the putative trial errors.  The sixth ground
lacks merit because petitioner's trial counsel was not ineffec-
tive.

> a.   The Trial Court's
>      Compliance with Section 310.10

Petitioner first argues that his appellate counsel was
ineffective for failing to argue that the Trial Court violated
N.Y. Crim. Proc. L. § 310.30 in responding to six jury notes by
not allowing counsel an opportunity to suggest appropriate
responses or apprising counsel of the substance of the Court's
planned responses (Pet. Habeas Mem., annexed as Exhibit D to
Pet., at 12, citing People v. O'Rama, 78 N.Y.2d 270, 579 N.E.2d
189, 574 N.Y.S.2d 159 (1991)).

New York law requires that a defendant must raise an
objection before the trial court in order to preserve it for
review.  N.Y. Crim. Proc. L. § 470.05 ("[A] question of law with
respect to a ruling or instruction of a criminal court during a

trial or proceeding is presented when a protest thereto was
registered, by the party claiming the error . . . ."); People v.
Agramonte, 87 N.Y.2d 765, 769-70, 665 N.E.2d 164, 166, 642
N.Y.S.2d 594, 596 (1996)("Only fundamental defects in judicial
proceedings . . . where . . . the entire trial is irreparably
tainted . . . need not be preserved to present a question of law
reviewable by this Court.") (emphasis in original; internal marks
and citations omitted); Munoz v. Burge, 442 F. App'x 602, 604 (2d
Cir. 2011); Whitfield v. Ricks, 01 Civ. 11398 (LAK), 2006 WL
3030883 at *11 (S.D.N.Y. Oct. 24, 2006) (Kaplan, D.J.).   An
unpreserved claim is procedurally barred when raised on appeal.
Munoz v. Burge, supra, 442 F. App'x at 604.   Because raising an
unpreserved claim on appeal would be a futile exercise, appellate
counsel cannot be ineffective for failing to raise it.   Aparicio
v. Artuz, supra, 269 F.3d at 96 (holding that appellate counsel
was not ineffective for failing to raise defendant's unpreserved
double jeopardy claim).

       As noted by respondent, petitioner's trial counsel had
timely notice of each jury note[10] and did not object to the Trial

_____

       [10]Petitioner's memorandum of law states that the Trial Court
committed a "mode of proceedings error," which occurs when the
Trial Court does not give advance notice of jury notes to defense
counsel (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 14).
Although, such errors need not be preserved for review, see
                                            (continued...)

Court's handling of the jury notes (Opp'n Mem. (Docket Item 17) at 67; Tr. 511-529).  A defendant's failure to timely object to a violation of N.Y. Crim. Proc. Law Section 310.10 results in a waiver.  <u>Munoz v. Burge</u>, <u>supra</u>, 442 F. App'x at 604 (finding petitioner's 310.10 claim waived under similar circumstances). Consequently, appellate counsel cannot be faulted for omitting the argument.  <u>Munoz v. Burge</u>, <u>supra</u>, 442 F. App'x at 604.

b.   The Trial
     <u>Court's Jury Charge</u>

Petitioner next contends that his appellate counsel was ineffective for failing to argue that the "[T]rial [C]ourt did not charge the jury with the full indictment," when "[p]etitioner's trial counsel made a timely objection" and the "the [C]ourt admitted that it intentionally mischarged the jury" (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 7-8). Petitioner asserts that "the court['s] instruction implied that the government was not required to prove beyond a reasonable doubt sexual intercourse and aggravated sexual conduct" (Pet.

---

(...continued)
<u>People v. Kadarko</u>, 14 N.Y.3d 426, 429, 928 N.E.2d 1025, 1026, 902 N.Y.S.2d 828, 829 (2010), the trial record indicates that Judge Farber provided advance notice of all jury notes to the parties (Tr. 511-12, 517, 527, 530, 533, 538-40).

Reply (Docket Item 24) at 42).  The record, however, contradicts
the petitioner's assertions.

In its jury charge, the Trial Court stated, in perti-
nent part:

> The Court:      Under our law, a person is guilty of the
>                 course of sexual conduct against a child
>                 in the first degree when, over a period
>                 of time, not less than three months in
>                 duration he or she engages in two or
>                 more acts of sexual conduct which in-
>                 cludes, at least one act of oral sexual
>                 conduct or anal conduct with a child . .
>                 . less than 11 years old

(Tr. 495).  The Court's charge continued to track the New York
Criminal Jury Instruction for New York Penal Law Section
130.75(1)(a) except that it omitted any reference to aggravated
sexual contact (Tr. 495-98; see N.Y. Criminal Jury Instructions,
Penal Law § 130.75 at 1-4 (2d ed. 2012)).  The Court explained
this omission during a sidebar conference immediately following
the jury charge, after asking counsel if either had any objec-
tions regarding the charge or otherwise:

> The Court:      Nothing in addition of what we already
>                 talked about?
>
> [Defense]:      One addition.  When the Court charged on
>                 the statute there were three elements
>                 and you went through the elements and
>                 I'm requesting that the jury be charged,
>                 there are four elements and the fourth
>                 element is, that this was the identity
>                 of this man, that it was this defendant
>                 that was doing that.

The Court:     I'm sorry.  I fumbled it the first time.
               I should mention one thing about that,
               when I gave you the charge I'd taken out
               of the charge or simplified it somewhat
               by eliminating the item of sexual con-
               tacts that were not alleged in the in-
               dictment, such as sexual contact and
               aggravated sexual contact.  I had for-
               gotten to strike that from the elements,
               but I took it out when I was giving the
               instructions.  It wouldn't make sense to
               talk about aggravated sexual contact.
               There's no allegation of that.

(Tr. 505-06).  Petitioner asserts that his counsel objected to

the Court's admitted deviation from the statutory language, but

the transcript demonstrates that petitioner's counsel objected to

another issue -- the omission of a charge on the issue of iden-

tity (Tr. 505-06).  Thus, petitioner's current objection was

never preserved.  Accordingly, appellate counsel was not ineffec-

tive for failing to raise this argument on appeal.[11]  Bernardo v.

Senkowski, 03 Civ. 394 (MHD), 2004 WL 1661099 at *11 (S.D.N.Y.

July 23, 2004) (Dolinger, M.J.) (holding that appellate counsel

is not ineffective for not raising unpreserved claim that the

---

[11]Even if counsel had preserved petitioner's argument at
trial, it likely would not have resulted in a favorable decision.
In New York, a trial court may omit from the jury charge
statutory language irrelevant to the case before it.  People v.
Gayden, 107 A.D.3d 1428, 1429-30, 967 N.Y.S.2d 277, 279 (4th
Dep't 2013); People v. Black, 38 A.D.3d 1283, 1285, 832 N.Y.S.2d
375, 377-78 (4th Dep't 2007), citing People v. Grega, 72 N.Y.2d
489, 497, 531 N.E.2d 279, 283, 534 N.Y.S.2d 647, 651 (1988).

jury charge was in error); <u>Avincola v. Stinson</u>, 60 F. Supp. 2d

133, 148-49 (S.D.N.Y. 1999)(Scheindlin, D.J.) (collecting cases).

        c.   Petitioner's Right
           <u>to Confrontation</u>

      Petitioner next faults his appellate counsel for not

arguing that his confrontation rights were violated because "the

key witness cover[ed] her face in order not to view the peti-

tioner during her entire testimony" (Pet. Habeas Mem., annexed as

Exhibit D to Pet., at 4).  Respondent contends that appellate

counsel was not ineffective for omitting this argument on appeal

because it was not preserved and is without merit (Opp'n Mem.

(Docket Item 17) at 53-57).

      Again, petitioner's claim fails because his trial

counsel did not preserve it for review.  <u>Morales v. United

States</u>, 635 F.3d 39, 43-44 (2d Cir. 2011) (holding appellate

counsel was not ineffective for failing to argue that defendant's

Sixth Amendment right was violated because there was no objection

or arguable violation on the trial record); <u>Aparicio v. Artuz</u>,

<u>supra</u>, 269 F.3d at 96 (holding that appellate counsel's failure

to raise a constitutional claim was reasonable because it was

unpreserved and would have been futile to do so).

d.   Petitioner's Ability
to Present a Complete Defense

Next, petitioner claims that his appellate counsel was ineffective for not arguing that the Trial Court inappropriately excluded petitioner's evidence of a third-party's guilt (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 9, citing Holmes v. South Carolina, 547 U.S. 319 (2006)).  The trial record does not indicate, nor does the petitioner identify what evidence his trial counsel attempted to offer regarding CR's guilt, what evidence the Trial Court excluded or what objection his trial counsel made in response to the Trial Court's ruling.[12]  Appel-late counsel cannot be deficient for not raising a constitutional claim that lacks a factual basis, and which was not preserved for review.  Morales v. United States, supra, 635 F.3d at 43-44 (concluding that appellate counsel was not deficient for failing

---

[12]Petitioner asserts that "[p]roffered evidence included, [CJ's] testimony that . . . she caught [CR] and [NR] engaging in sexual conduct on several occassion[s], also [CJ] stated she [caught NR] touching herself under the blanket, Lisa Saunders testimony along with the C.A.C. report written by Ms. Saunders, **stating that [CJ] brought the kids to her office because she feels her oldest son [CR] had no boundaries when it comes to his little sister [NR]**" (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 9) (bold-faced in original).  This evidence cannot be the basis of petitioner's claim because it was admitted at his trial (Tr. 63-65, 96-100, 185, 190-91).

to raise a Sixth Amendment claim that had no factual basis in the record and to which no party objected).

　　　　　　　　e.　　Admission of
　　　　　　　　　　　Petitioner's Prior Bad Acts

　　　　　Petitioner next contends that his appellate counsel was ineffective for not arguing that the Trial Court erred in admitting evidence of other bad acts allegedly committed by petitioner (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 11). Petitioner first argues that the Court improperly allowed NR and CJ to testify about threats petitioner allegedly made to members of NR and CJ's family (Pet. Reply (Docket Item 24) at 53). Petitioner's trial counsel, however, did not object to this testimony nor did he object to the prosecution's reference to the threat during its opening and its summation (Tr. 17, 263-65, 444, 462, 464). Because this claim was also unpreserved for review, petitioner's appellate counsel cannot be ineffective for failing to raise it.

　　　　　Second, petitioner argues that the Trial Court improperly allowed CJ to testify that the police had to escort petitioner from her home (Pet. Reply (Docket Item 24) at 53). In this instance, petitioner's trial counsel did make a timely objection to the testimony (Tr. 56). Nonetheless, appellate

counsel was not deficient for failing to raise this argument on appeal, and in any event, counsel's failure did not cause petitioner any prejudice.

Turning to the first prong of <u>Strickland</u> -- whether appellate counsel's decision to omit this argument on appeal was objectively unreasonable -- an appellate argument based on CJ's testimony would not have been particularly strong, and certainly not stronger that petitioner's other arguments.  Appellate counsel raised three claims on appeal which, collectively, advanced the argument that the prosecution's failure to call CR, in conjunction with the lack of corroboration of NR's testimony, suggested that CR was really the abuser (Pet. App. Br., annexed as Exhibit A to Pet., at 18, 29, 35).  CR's testimony -- that petitioner was removed from her apartment in handcuffs -- is not particularly inflammatory nor is it even inculpatory.  If it even qualifies as "bad act" testimony, it barely does so and its impact on the jury, no doubt, paled in comparison to NR's testimony.  "The process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  <u>Smith v. Murray</u>, <u>supra</u>, 477 U.S. at (1986), <u>quoting</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).  Because (1) CJ's testimony on this matter was short and relatively innocuous, (2)

the Trial Court properly cured the error by striking the testi-
mony and (3) defense counsel declined the offer of a curative
instruction to the jury (Tr. 56), it cannot be said that peti-
tioner's appellate counsel omitted a "significant and obvious
issue[] on appeal."  Mayo v. Henderson, supra, 13 F.3d at 533.

          In any event, counsel's omission on appeal did not
cause petitioner any prejudice because the argument would not
have likely resulted in a favorable decision by the New York
Court of Appeals.  Petitioner contends that the admission of CJ's
testimony gave "the jury the notion that the petitioner was
arrested" (Pet. Habeas Mem., annexed as Exhibit D to Pet., at
11).  Although alleged evidence of prior uncharged crimes may
constitute adequate ground to reverse a verdict under New York
law, "mere speculation that a jury may discern something sinister
about a defendant's behavior does not render such behavior an
uncharged crime."  People v. Enoch, 221 A.D.2d 253, 254, 634
N.Y.S.2d 65, 67 (1st Dep't 1995); People v. Flores, 210 A.D.2d 1,
2, 618 N.Y.S.2d 815, 815 (1st Dep't 1994).  In addition, testi-
mony indicating that a defendant merely interacted with the
police does not constitute evidence of an uncharged crime.
People v. Traore, 23 A.D.3d 267, 267, 803 N.Y.S.2d 566, 566 (1st
Dep't 2005)("The explanation, that [defendant] had been driving
with friends and had been 'stopped,' did not constitute evidence

of an uncharged crime); <u>People v. Clemmons</u>, 83 A.D.3d 859, 860, 921 N.Y.S.2d 131, 132 (2d Dep't 2011).  In light of these considerations, the improper admission of petitioner's prior bad acts would not have resulted in a violation of petitioner's right to a fair trial.  <u>Tingling v. Donelli</u>, 07 Civ. 1833 (RMB)(DF), 2008 WL 4724567 at *9 (S.D.N.Y. Oct. 24, 2008)(Berman, D.J.)("[I]n light of the other strong evidence of [p]etitioner's guilt . . . [p]etitioner has not shown that the admitted evidence removed a reasonable doubt that otherwise would have existed."); <u>Clanton v. Rivera</u>, 06 Civ. 4756 (DAB)(AJP), 2008 WL 2839712 at *21 (S.D.N.Y. July 22, 2008) (Report & Recommendation) (Peck, M.J.), <u>adopted at</u>, 2010 WL 1685414 (S.D.N.Y. Apr. 22, 2010) (Batts, D.J.) ("Limiting instructions have been found to militate against a finding of constitutional error.").  Because petitioner failed to prove that his appellate counsel's omission of this claim was deficient, or that the omission of the claim caused him prejudice on appeal, appellate counsel's omission of a claim based on the admission of petitioner's prior bad acts provides no basis for habeas relief.

f.   Ineffective Assistance
of Trial Counsel

Finally, petitioner contends that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not consulting or retaining a psychological expert (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 2). Petitioner requests that an evidentiary hearing be held to develop the record concerning this issue (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 3, citing Spearman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998)).[13]   Oddly, respondent fails to address petitioner's request for a hearing in his memorandum of law, and addresses only whether trial counsel was ineffective (Opp'n Mem. (Docket Item 17) at 40-48).

---

[13]Petitioner also wishes to explore why his trial counsel failed to offer the videotape of NR's grand jury testimony in its entirety (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 3). Because petitioner did not raise this allegation in his petition for a writ of error coram nobis, it was not properly presented to the state courts and is unexhausted.  Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994); Torres v. Fisher, 06-CV-6579 (SLT)(VVP), 2010 WL 1338088 at *10 (S.D.N.Y. Mar. 31, 2010)(Townes, D.J.); Jackson v. Kuhlman, CV-94-5934 (JG), 1997 WL 1068667 at *10 (E.D.N.Y. May 22, 1997), quoting Vasquez v. Hillery, 474 U.S. 254, 260 (1986) ("If a petitioner raises precisely the same legal claims in state and federal proceedings, reliance in the two proceedings upon different factual grounds that 'fundamentally alter the legal claim already considered by the state courts' will foreclose the conclusion that the claims are exhausted").  Accordingly, no evidentiary hearing is warranted to address the allegation.

Petitioner's request for an evidentiary hearing to assess the adequacy of the Appellate Division's decision is foreclosed by Cullen v. Pinholster, supra, 131 S. Ct. at 1400. When the state courts resolve a claim on the merits, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim . . . ." Cullen v. Pinholster, supra, 131 S. Ct. at 1398. A federal court cannot "rely[] on evidence beyond the state court record to reach [its] result." Young v. Conway, 715 F.3d 79, 82 (2d Cir. 2013); Ridgeway v. Zon, 424 F. App'x. 58, 59-60 (2d Cir. 2011). This limitation confines this Court's analysis to the record, as presented to the state court, and precludes an evidentiary hearing. Petitioner's request for an evidentiary hearing is, therefore, denied.

Turning to the merits, petitioner argues that trial counsel was deficient because he did not "consult or call on a psychological expert to rebut Dr. Treacy's testimony," (Pet. Reply (Docket Item 24) at 29), and that his appellate counsel was deficient for failing to raise this argument on appeal (Pet. Habeas Mem., annexed as Exhibit D to Pet., at 1). In support of his claim, petitioner relies solely on four Second Circuit decisions discussing the role of expert witnesses in defending child sexual abuse cases in the context of habeas corpus ineffec-

tive-assistance-of-counsel claims: Gersten v. Senkowski, supra, 426 F.3d at 607-09; Eze v. Senkowski, 321 F.3d 110, 127-28 (2d Cir. 2003); Pavel v. Hollins, 261 F.3d 210, 223-24 (2d Cir. 2001); and Lindstadt v. Keane, supra, 239 F.3d at 202. In general terms, these cases stand for the proposition that defense counsel's assistance is objectively deficient where the prosecution's case rests entirely on the credibility of the alleged witness's testimony:

> [and] [d]efense counsel fail[s] to consult or call an expert on the psychology of child sexual abuse, or to educate himself sufficiently on the scientific issues[, such that] he [i]s unable to mount an effective cross-examination, and misse[s] an opportunity to rebut [the prosecution's] attempt at bolstering the alleged victim's credibility.

Gersten v. Senkowski, supra, 426 F.3d at 611; accord Eze v. Senkowski, supra, 321 F.3d at 131-32.

Petitioner's argument that his appellate counsel was ineffective fails because, in contrast to Gersten and Eze,[14]

---

[14]In Pavel v. Hollins, supra, 261 F.3d at 214, the prosecution only presented testimony of a medical expert. In Lindstadt v. Keane, supra, 239 F.3d at 195, the prosecution presented testimony from a psychological expert, but the petitioner in that case did not raise any claim with respect to defense counsel's failure to rebut the prosecution's psychological expert. Because neither case addresses whether trial counsel was ineffective for failing to offer expert testimony in rebuttal, neither is material to the claims asserted here.

petitioner's trial counsel adequately prepared for and contested the testimony of the prosecution's psychological expert.

Like Gersten, petitioner's counsel did not call an expert psychologist to refute the testimony of the prosecution's psychological expert, Dr. Treacy (Tr. 395). But unlike Gersten, where defense counsel clearly failed to investigate the scientific basis of the psychological expert's testimony or even consult with an expert, petitioner's counsel consulted with at least one expert who would have disputed the prosecution's expert testimony (Tr. 388-89). In fact, it was not until the conclusion of the prosecution's case in chief that defense counsel decided not to call the expert. (Tr. 391, 395). In stark contrast to Gersten, counsel's decision to retain and consult an expert indicates that his ultimate determination not to present such testimony was for strategic reasons and not a result of incompetence or a lack of preparation. Lazicki v. Moore, Civ. A. 04-1041 (JAG), 2006 WL 840398 at *13 n.12 (D.N.J. Mar. 28, 2006). "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)(per curiam); Gersten v. Senkowski, supra, 426 F.3d at 607 ("[S]trategic choices made by counsel after thorough investigation . . . are virtually unchallengable."), quoting

Strickland v. Washington, supra, 466 U.S. at 690.  I cannot conclude that trial counsel's decision not to call an expert witness was objectively unreasonable under these circumstances.

Additionally, trial counsel's cross-examination and summation suggest that he was adequately prepared to address the relevant scientific issues.  In Gersten, defense counsel failed to ask probing questions on cross-examination and only elicited from the prosecution's expert that "very, very few" children make false accusations.  Gersten v. Senkowski, supra, 426 F.3d at 597. Gersten's counsel also failed to investigate and rebut the scientific basis for Child Sex Abuse Accommodation Syndrome, which "lack[s] any scientific basis . . . as a generalized explanation of children's reactions to sexual abuse, including delayed disclosure and blurred memory."  Gersten v. Senkowski, 426 F.3d at 611.

Petitioner's trial counsel competently cross-examined the prosecution's expert to support his argument that CR abused NR and that NR falsely accused the petitioner to protect CR.  On cross-examination, counsel elicited from Dr. Treacy that young children are prone to making false accusations by way of a process called confabulation, i.e., the creation of memories where none actually exist (Tr. 372-74).  Dr. Treacy admitted that confabulation is triggered in children of a young age, when the

64

abuser is a family member, and at the suggestion or urging of
close family members to resolve the pressure to please (Tr. 373-
75).  Counsel also elicited from Dr. Treacy that when the abuser
is a family member, the victim will accuse non-family members to
shift attention away from the real abuser (Tr. 375-79).

       Defense counsel referred to Dr. Treacy's testimony
during summation to argue that CR more appropriately fit the
profile of an abuser described by the Dr. Treacy in her direct
testimony (Tr. 431-34). He also asserted that NR, as a young
child and at the urging of her mother, likely falsely accused the
petitioner to protect her real abuser and to please her mother
(Tr. 431-35).  Significantly, petitioner's counsel never chal-
lenged the scientific basis of Dr. Treacy's expert opinion on
cross-examination or on summation.  It is plain that this was a
conscious strategic decision made by counsel because Dr. Treacy's
conclusions supported his theory of the case, namely that NR's
psychological makeup and motivation to protect CR caused her to
accuse petitioner falsely (Tr. 431-45).

       In short, defense counsel's cross-examination elicited
helpful testimony from Dr. Treacy to support his theory that CR
was the real abuser, thereby obviating the need to bring in a
defense expert. Eze v. Senkowski, supra, 321 F.3d at 132 (find-
ing no fault in trial counsel's cross examination, which utilized

behavioral studies to "suggest[] other factors that could have accounted for the [alleged victims'] behavior besides sexual abuse").  This strategic decision was objectively reasonable. See Wallace v. Poole, 10 Civ. 722 (MAT), 2011 WL 6370596 at *7-*9 (W.D.N.Y. Dec. 20, 2011); Riley v. Cully, 09 Civ. 676, 2011 WL 1885976 at *7 (W.D.N.Y. May 18, 2011); Usher v. Ercole, 710 F. Supp. 2d 287, 303-04 (E.D.N.Y. 2010)(finding counsel deficient); Lazicki v. Moore, supra, 2006 WL 840398 at *13 n.12.  Thus, the record does not sustain petitioner's contention that his trial counsel was ineffective.  Because I find that trial counsel's representation was not deficient, I need not address the question of prejudice.  Strickland v. Washington, supra, 466 U.S. at 697.

        Because petitioner's trial counsel was not ineffective, appellate counsel cannot be ineffective for failing to raise that argument on appeal.  Aparicio v. Artuz, supra, 269 F.3d at 99 (citations and inner quotations omitted); see also Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require [appellate] counsel . . . to press meritless arguments before a court."); Samet v. United States, 09 Civ 5190 (CM), 01 CR 216 (CM), 2011 WL 5548012 at *10 (S.D.N.Y. Nov. 14, 2011) (McMahon, D.J.) ("Samet's claims with regard to Mr. Burstyn are meritless, thus appellate counsel was not ineffective for not raising the claims on appeal."); Prendergast v. Rivera, 06 Civ.

5314 (BMC), 2011 WL 4899945 at *7 (E.D.N.Y. Oct. 13, 2011).
Accordingly, the sixth ground for petitioner's ineffective-
assistance-of-appellate-counsel claim provides no basis for
habeas relief.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

In addition, because petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued.  28
U.S.C. § 2253.  To warrant the issuance of a certificate of
appealability, "petitioner must show that reasonable jurists
could debate whether . . . the petition should have been resolved
in a different manner or that the issues presented were adequate
to deserve encouragement to proceed further."  Middleton v.
Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam)
(citation and internal quotation marks omitted); see also Love v.
McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the
reasons set forth above, I conclude that there would be no
difference of opinion among reasonable jurists that petitioner's
federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed. R. Civ. P. 6(a).  Such objections (an responses thereto) shall be filed with the Clerk fo the Court, with courtesy copies delivered to the Chambers of the Honorable Alison J. Nathan, United States District Judge, 500 Pearl Street, Room 2102, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).


Dated:  New York, New York
        October 25, 2013

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies Mailed To:

Mr. Pablo Rodriguez
D.I.N. 07-A-2232
Five Points Correctional Facility
P.O. Box 119
Romulus, New York 14541

David A. Crowley, Esq.
Assistant District Attorney,
One Hogan Place
New York, New York  10011